716 P.2d 50

**STATE of Arizona, Appellee,**

v.

**Mark Andrew ANZIVINO, Appellant.**

**No. 1 CA–CR 7705.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 5, 1985.

Motion for Reconsideration Denied Jan. 15, 1986.

Robert K. Corbin, The Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div., Gary A. Fadell, Asst. Atty. Gen., Phoenix, for appellee.

Michael A. Mulhall, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

Appellant, Mark Andrew Anzivino, a juvenile, along with co-defendant Richard Shoff, was charged with first degree murder, aggravated robbery, second degree burglary, and kidnapping. He was ordered to be tried as an adult. He entered into a plea agreement and pled no contest to the crimes charged, except that he pled to second degree murder rather than first degree murder. After a mitigation hearing, the court imposed the presumptive sentences on all counts, sentencing him to 10.5 years each for second degree murder and kidnapping, and 7.5 years each for robbery and

burglary. All sentences were *consecutive*, except the burglary and the murder sentences which were concurrent.

The facts are these. The co-defendants and a third boy decided they needed a car and money because they wanted to leave the state. Shoff suggested an elderly victim who was wealthy. The third boy acted as a lookout while Shoff and the appellant attempted to break into the victim's house. They were confronted by the elderly female victim, who prodded Shoff with a cane. Shoff grabbed the victim and wrestled her to the ground. The appellant then hit her three times on the head with a lead pipe. The trio hid the victim's body, stole her car, and drove to Texas. In Amarillo, Texas, the police stopped the youths and determined that the three boys were runaways and involved in the murder.

Shoff and the appellant were indicted as co-defendants. The third boy was treated as a juvenile. Shoff pled guilty to three counts and received presumptive, concurrent terms, the longest of which was 10.5 years. After the appellant was found competent, he entered into the plea agreement.

■ The appellant's first argument is that the trial court's determination of appellant's competency was not supported by the evidence. He refers to a variety of doctors' reports in support of his argument. We disagree. The parties stipulated on the record that the court could determine appellant's competency based upon the reports of Drs. Donald F. Tatro and Carl Wellish, and they filed a written stipulation to that effect. Thus, the reports of various other doctors were not relevant to the determination of competency.

Dr. Wellish concluded:

In my opinion Master Anzivino is competent to stand trial, can assist in his own defense, can participate in plea bargaining and was competent under the M'Naghten [sic] Rule at the time of the alleged offense.

Dr. Tatro concluded:

There is nothing about Mark's present mental condition to suggest that he is not competent to stand trial. He has a clear understanding of the charge that has been brought against him and the potential penalties that he may have to face. He is familiar with and understands the workings of the judicial system. He knows and comprehends his rights as a defendant and realizes that a plea of guilty would result in his losing his right to a trial by jury. He is well able to assist counsel in preparation of a defense.

Appellant's emphasis on prior medical reports, which had indicated more severe mental problems, is not only irrelevant but is misleading. Dr. Tatro, who had himself previously examined the appellant, stated in his later report:

When I first saw Mark, almost 4 months ago, he displayed a very jaunty, nonchalant manner and spoke laughingly and unfeelingly about his crime and the possible penalties he was facing. At that time, he displayed many signs of an active schizophrenic process—delusions, hallucinations, inappropriate affect, autistic thinking, and episodes of interpersonal withdrawal and depersonalization.

None of these characteristics were in evidence at the time of this interview....

Moreover, Dr. Armando Bencomo, who examined the appellant at the request of defense counsel after Dr. Wellish and Dr. Tatro performed the exams pursuant to stipulation, testified at the mitigation hearing that when he examined the appellant on October 1, 1983, appellant was mentally competent to enter into a plea agreement. Furthermore, the minute entry of October 13, 1983 states, "Mr. Southern, defense counsel, states for the record that based upon the report of Dr. Armando Bencomo, that the defendant is able to understand the nature of the proceedings and plea, and that a Rule 11 examination is not needed."

Thus, the trial court properly found that defendant was competent. A mere diagnosis that a defendant has a mental disease or disorder does not mean that he is unable

to make rational decisions regarding his case. *State v. Harding*, 137 Ariz. 278, 286, 670 P.2d 383, 391 (1983). In view of the Wellish and Tatro reports, the trial court could hardly have found defendant anything other than competent to stand trial.

 The appellant's next argument is that the trial court should have made a separate evaluation of whether appellant was competent to plead guilty in addition to finding him competent to stand trial. Competence to enter a plea of guilty must be determined by a higher standard than competence to stand trial. *State v. Pierce*, 116 Ariz. 435, 438, 569 P.2d 865, 868 (App. 1977). However, if a defendant is found competent to stand trial, a specific determination of competency to plead guilty need not be made in every case. *State v. Young*, 112 Ariz. 361, 362, 542 P.2d 20, 21 (1975). A separate inquiry is required where there is something in the record which indicates a real doubt as to the defendant's competence to make a reasonable choice among alternatives. *State v. Thompson*, 113 Ariz. 1, 3, 545 P.2d 925, 927 (1976).

In this case it is clear that the reports of Drs. Wellish and Tatro establish that defendant was competent to enter into a plea agreement. The notices of appointment to each doctor specifically asked that the doctors give, in their reports:

> Your opinion, in the event the defendant chooses to plead guilty, whether mental illness has substantially impaired the defendant's ability to make a competent decision concerning waiver of rights contained in the statement of rights at the bottom of this page, and to have a rational, as well as factual, understanding of the consequences of entering a plea of guilty.

The form, at the bottom, lists the constitutional rights the accused waives by entering a plea of guilty. Dr. Wellish specifically stated that the defendant "can participate in plea bargaining." Dr. Tatro noted that, "[h]e knows and comprehends his rights as a defendant and realizes that a plea of guilty would result in his losing his right to a trial by jury." Appellant's own expert, Dr. Bencomo, who examined appellant on October 1, 1983, just prior to the change of plea on October 13, 1983, found appellant competent to plead guilty. According to the minute entry, defense counsel, on the date of the entry of the plea of no contest, stated to the court that defendant was able to understand the nature of the proceedings and the plea.

In *Young*, 112 Ariz. at 361, 542 P.2d at 20, both of the appointed experts had found the defendant competent to plead guilty. There, the court found no error in the trial court's failure to make a separate determination as to the defendant's competence to plead guilty. We conclude that the trial court here, similarly, did not err.

The last argument raised by appellant is that the trial court erred by imposing a disproportionately long sentence on the appellant as compared to that imposed on his co-defendant, Shoff. Appellant, because of the fact that three of the four sentences were made consecutive to each other, received in effect a 28.5-year sentence, while Shoff, because his sentences on the three charges to which he pled were concurrent, received in effect a 10.5-year sentence. Appellant does not argue that his sentences exceeded that which is allowed by law for the charges.

As we discuss later, we remand this case for resentencing because the trial judge failed to articulate the reasons for imposing consecutive sentences. We note, for the reasons we discuss immediately below, that the record would appear to support the sentence actually imposed and since the appellant has raised the issue we will explain why. Nothing in our discussion is intended to bind the trial judge should his re-examination of the matter lead him to a contrary conclusion or should he, in his discretion, decide to impose lesser sentences than previously imposed.

 There is no requirement that a court impose an identical sentence upon co-defendants. *State v. Massey*, 2 Ariz.App. 551, 552, 410 P.2d 669, 670 (1966). It is

reasonable that one defendant's more severe sentence may be justified by the defendant's greater relative participation in the offense, the relative maturity of the defendant, and the prior criminal record and background of the defendant. *People v. Godinez*, 92 Ill.App.3d 523, 524, 47 Ill. Dec. 311, 313, 415 N.E.2d 36, 38 (1980), *rev'd on other grounds*, 91 Ill.2d 47, 61 Ill.Dec. 524, 434 N.E.2d 1121 (1982). Because we do not have the Shoff presentence report before us, we cannot compare the prior criminal records and background of the appellant and Shoff. It is the duty of counsel who raise issues on appeal to see that the record before the reviewing court contains the material to which he takes exception, and, if the matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court. *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982).

As to the relative maturity of the two defendants, we note that the appellant's own brief states that, at the time of arrest, appellant was sixteen years old, while his co-defendants were fifteen years old. Moreover, we believe the trial court could consider a statement by Amarillo Police Detective House that appellant was the leader. *See State v. Gerlaugh*, 144 Ariz. 449, 455, 698 P.2d 694, 700 (1985).

Appellant's presentence report does allow us to compare the relative degrees of involvement of Shoff and appellant in the crimes charged against them. It was certainly reasonable for the trial court to conclude that appellant was substantially more responsible for the victim's death than was Shoff, and consequently to sentence appellant more severely than Shoff. First and foremost, the third boy stated that the appellant hit the victim in the head three times with a lead pipe. The appellant himself told Amarillo officers he hit the victim with a metal pipe. The coroner listed the cause of death as blunt force trauma to the head. Thus, the conclusion is reasonably clear that it was the appellant who directly caused the victim's death. Also, whereas Shoff told police that he had not intended that the victim be killed, the appellant told them that he had decided beforehand to kill her. These statements certainly support a finding of greater malicious intent by appellant than by Shoff.

■ Discretion is vested in the trial court to determine the proper sentence to be imposed. *State v. Collins*, 111 Ariz. 303, 308, 528 P.2d 829, 834 (1974). The trial court is in the best position to evaluate the defendant's crime in light of the facts position to evaluate the defendant's crime in light of the facts of the case and the defendant's background and character. *Id.*, 111 Ariz. at 308, 528 P.2d at 834. We thus hold that the sentence the defendant received was not excessive of itself or vis-a-vis that given to his co-defendant. *State v. Schlarp*, 25 Ariz.App. 85, 87, 541 P.2d 411, 413 (1975).

■ One further matter need be mentioned. At the time of sentencing the trial judge did not state grounds for imposing consecutive sentences, as he was required to do by A.R.S. § 13–708. The appellant neither objected nor raised the issue in his opening brief. In the answering brief, the state has suggested that the trial court failed to comply with A.R.S. § 13–708. Appellant did not file a reply brief. Ordinarily, because appellant did not raise the issue in the opening brief, nor filed a reply brief once the state suggested the existence of the issue, we would hold that appellant has waived the issue. *See State v. McCall*, 139 Ariz. 147, 163, 677 P.2d 920, 937 (1983).

We are, however, "required to review the record of criminal cases for fundamental error and reverse where such error is found to be prejudicial to the defendant." *State v. Yslas*, 139 Ariz. 60, 63, 676 P.2d 1118, 1121 (1984). "Fundamental error is error that 'goes to the foundation of the case, or ... takes from a defendant a right essential to his defense.'" *State v. Wussler*, 139 Ariz. 428, 430, 679 P.2d 74, 76 (1984), *quoting State v. Mincey*, 130 Ariz. 389, 397, 636 P.2d 637, 645 (1981), *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982).

The trial court's failure to state grounds for imposing consecutive sentences does not fit neatly into this definition of fundamental error. However, the procedure for imposing consecutive sentences as dictated by A.R.S. § 13–708 is mandatory, and the case law applying A.R.S. § 13–708 has held that the "trial court must comply with the statute." *State v. Collins*, 133 Ariz. 20, 24, 648 P.2d 135, 139 (App.1982). In the past, we have discussed the strong policy reasons which support the requirement that the trial court articulate the reasons for imposing an *aggravated* sentence, *State v. Holstun*, 139 Ariz. 196, 677 P.2d 1304 (App.1983), and we find that those same policies require the trial court to state on the record the reasons for imposing *consecutive* sentences. It is, and will remain, our practice to remand cases for resentencing whenever we discover a violation of A.R.S. § 13–708. To do less would render the statute a dead letter. We appreciate the action of the Assistant Attorney General in candidly calling our attention to this matter.

Judgment of conviction affirmed; remanded for resentencing.

CORCORAN and EUBANK, JJ., concur.