**Gerald Charles SOUCH, Petitioner–Appellant,**

v.

**Don SCHAIVO, Deputy Warden, Respondent–Appellee.**

No. 01–15487.

United States Court of Appeals, Ninth Circuit.

Submitted April 9, 2002.*

Filed April 30, 2002.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.　　R.App. P. 34(a)(2).

Gerald Charles Souch, pro se, Florence, AZ, for the petitioner-appellant.

Janet Napolitano, Attorney General, AZ; Randall M. Howe, Chief Counsel, Criminal Appeals Section; Diane M. Ramsey, Assistant Attorney General, Criminal Appeals Section, Phoenix, AZ, for the respondent-appellee.

Before O'SCANNLAIN and TALLMAN, Circuit Judges, and KING,** District Judge.

## OPINION

O'SCANNLAIN, Circuit Judge.

We must decide whether a state trial court violated the Ex Post Facto Clause by determining that the sentences on multiple counts of conviction would run consecutively, rather than concurrently, under a state statute not yet in effect when the underlying crimes were committed.

### I

This case arises out of habeas petitioner Gerald Souch's conviction in Arizona state

---

** The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

court stemming from his activities of June 11, 1986. On that evening, clad in a frilly white dress and nylons, and wearing a white lacy bandana around his head, Souch broke into the house of Susan Gregor. Once inside, he woke Gregor, put his hand over her mouth, and held a knife to her neck. Souch then stripped her, forced her to submit to oral sex, forced her to perform oral sex on him, and finally, had intercourse with her. Afterward, he tied her up with an electrical cord, put a pillowcase over her head, and left the house.

An Arizona grand jury indicted Souch in connection with these events. On the first day of his ensuing trial before the Arizona Superior Court for Maricopa County, Souch entered an *Alford* plea[1] to one count of armed burglary, three counts of sexual assault, and one count of aggravated assault. Souch was later sentenced to consecutive sentences of twelve years for the armed burglary conviction, twelve years on each of the sexual assault convictions, and ten years on the aggravated assault conviction for a total of fifty-eight years.

A

On the date when Souch committed the underlying acts that led to the convictions in this case, Arizona law provided as follows:

Except as otherwise provided by statute, if multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any undischarged term of imprisonment imposed at a previous time is sentenced to an additional term of imprisonment, *the sentence or sentences imposed by the court shall run concurrently unless the court expressly directs otherwise,* in which case the court shall set forth on the record the reason for its sentence.

A.R.S. § 13–708 (1978) (emphasis added). Later in 1986, the Arizona legislature amended this provision by changing the word "concurrently" to "consecutively." Laws 1986, Ch. 300, § 1; *see also* A.R.S. § 13–708 (2001) (Historical and Statutory Notes). This change was effective on August 13, 1986—two months after Souch committed the crimes but six months before he was sentenced.[2]

Nonetheless, the state trial judge apparently believed that the new version of A.R.S. § 13–708 applied to Souch's case. During Souch's plea colloquy on January 26, 1987, the judge told Souch that "[t]he law require[d] [his] sentences to be consecutive unless the court indicates they will be concurrent and state[d] specifically why they should be concurrent." And in a hearing on March 16 of that year, the court reiterated the point. Finally, during

---

**1.** *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (holding that defendant may plead guilty without admitting commission of crime).

**2.** As the Magistrate Judge recognized,
> The Arizona Court of Appeals state[d] in [ *State v. Fillmore,* 187 Ariz. 174, 927 P.2d 1303, 1313 (Ariz.Ct.App.1996)] that the "new" version of A.R.S. section 13–708 became effective May 16, 1986. However, the 1986 Arizona Session Laws for the 37th Legislature, Second Regular Session, which contain the amendment and new version of

A.R.S. section 13–708, state that the general effective date of legislation passed is August 13, 1986, unless otherwise specified.
> Accordingly, the new version of A.R.S. section 13–708, which changed "concurrently" to "consecutively", did not become effective until August 13, 1986, which was after [Souch] committed his crimes but before he was sentenced.

*Souch v. Schaivo,* No. CV–97–01663–ROS, at 14 n. 9 (D. Ariz. filed Jan. 26, 2001) (Report and Recommendation of Magistrate Judge Sitver).

sentencing, the court remarked to Souch that

> Your attorney asked for consideration of concurrent sentences, as you know. That's not possible. The legislature has indicated in these kinds of cases, consecutive sentences must be imposed unless we find reasons why the sentence should be concurrent. I don't find any reason at all why any of the sentences should be concurrent.

On the contrary, the court found several factors militating in favor of consecutive sentences, including (1) the fact that Souch's indictment came close on the heels of a prior release from the Department of Corrections; (2) the fact that Souch showed no remorse for his acts; (3) the court's finding that Souch's acts were done in a premeditated, deliberate, and calculating manner; and (4) the court's finding that Souch posed a danger to society. The court therefore determined that the sentences would run consecutively, rather than concurrently.

### B

Following sentencing, Souch's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in the Arizona Court of Appeals. Souch himself filed a supplemental brief. The Court of Appeals considered all of the claims on the merits and affirmed the convictions and sentences in a memorandum decision. *State v. Souch*, No. CR–11455 (Ariz. Ct.App. filed Oct. 22, 1987). Souch petitioned for review by the Arizona Supreme Court which summarily denied the petition on March 23, 1988. Accordingly, his conviction became final on June 21, 1988. *See Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir.1999). Souch then filed a series of seven different petitions for post-conviction relief in state court, appealing denials in each to various levels of the Arizona court system. The Arizona courts ultimately denied him relief.

### C

Nearly nine years after his conviction became final, Souch filed a federal habeas petition on August 4, 1997,[3] in which he presented ten different grounds for habeas relief. Eventually, however, he dropped the last nine claims, and proceeded only with the first: a claim that the trial judge's use of the incorrect statute at sentencing violated the Ex Post Facto Clause. After briefing, Magistrate Judge Sitver issued a Report and Recommendation which concluded that Souch's sentence did not violate the Ex Post Facto Clause. The District Court adopted the Report and Recommendation and entered judgment accordingly. This timely appeal followed.[4]

### II

Souch's sole contention on appeal is that the trial judge's use of the amended version of A.R.S. § 13–708 at his sentencing, which was not in effect when he committed

---

**3.** After a series of decisions by two different magistrates and by the district court itself, the district court eventually decided that Souch's habeas petition was timely brought under AEDPA's one year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The Warden does not dispute this conclusion on appeal.

**4.** Souch timely filed his Notice of Appeal. In response, the district court issued an order denying Souch a Certificate of Appealability ("COA"). *See* FED. R. APP. P. 22(b). *See generally* 28 U.S.C. § 2253(c); *Gatlin v. Madding*, 189 F.3d 882, 886 (9th Cir.1999) ("There is no doubt that issuance of a certificate of appealability is a jurisdictional prerequisite to appeal."). Souch then requested a COA from this court, and we granted the request. *See* NINTH CIR. R. 22–1(c).

the underlying crimes, violated the Ex Post Facto Clause. Thus, he contends, he is entitled to habeas relief.

■ Because this case comes to this Court in the form of a habeas petition seeking relief from a state court adjudicated confinement, and the habeas petition was filed after the effective date of AEDPA, the panel may only grant the writ if the Arizona courts' decision is "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "That is, [Souch's] conviction must stand unless it leaves us with a definite and firm conviction that an error has been committed." *McCoy v. Stewart*, 282 F.3d 626, 629 (9th Cir.2002) (internal quotation marks omitted).

The Ex Post Facto Clause provides that "No State shall ... pass any ... ex post facto Law...." U.S. Const. art. I, § 10, cl. 1. This provision, the Supreme Court has explained, "incorporated a term of art with an established meaning at the time of the framing of the Constitution." *California Dep't of Corr. v. Morales*, 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (citing *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)) (internal quotation marks omitted). Accordingly, the Court has held that the Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Id.* (internal quotation marks omitted). Neither party argues that the legislation at issue in this case altered the definitions of any of the crimes to which Souch pleaded guilty. Rather, Souch contends that the trial court's use of the new version of A.R.S. § 13–708 increased the punishment for those crimes.

## A

■ As the Supreme Court first explained over 200 years ago, the text and history of the Ex Post Facto Clause make clear that it prohibits states from enacting any law that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 391, 1 L.Ed. 648 (1798). Therefore, in considering whether the amended version of A.R.S. § 13–708 is subject to the constraints of the Ex Post Facto Clause when applied retroactively, the question we must answer today is not whether the statute "produces some ambiguous sort of 'disadvantage,' ... but ... whether [it] ... increases the penalty by which a crime is punishable." *Morales*, 514 U.S. at 506 n. 3, 115 S.Ct. 1597; *see also Miller v. Florida*, 482 U.S. 423, 431, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) ("It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law.") (internal quotation marks omitted). Accordingly, we must consider "whether the standards of punishment set up before and after the commission of an offense differ, and whether the later standard is more onerous than the earlier within the meaning of the constitutional prohibition" by comparing "the practical operation" of the pre-amendment version and the amended version of A.R.S. § 13–708 as applied to Souch's offenses. *Murtishaw v. Woodford*, 255 F.3d 926, 965 (9th Cir.2001) (citing *Lindsey v. Washington*, 301 U.S. 397, 400, 57 S.Ct. 797, 81 L.Ed. 1182 (1937)).

■ Souch argues that the former § 13–708 created a "presumption" that sentences would run concurrently, and required a trial judge to explain any departure from that presumption by indicating reasons that the sentences should run consecutively. The amended statute, he contends, reversed that presumption. Ac-

cordingly, he concludes, the state trial court's use of the new statute at sentencing, even though it was not yet in effect when he committed the underlying crimes, resulted in increased punishment for those crimes.

■ Our precedent, however, forecloses this contention. As we have explained before, "[i]n applying the ex post facto prohibition of the Federal Constitution to state laws, a federal court accepts the meaning ascribed to them by the highest court of the state." *Murtishaw*, 255 F.3d at 964–65. And the Arizona courts have explained that neither the old nor the new version of A.R.S. § 13–708 creates a "presumption," at least as Souch uses the term.

In *State v. Garza*, 192 Ariz. 171, 962 P.2d 898 (Ariz.1998), for example, the Arizona Supreme Court addressed the new version of A.R.S. § 13–708. In *Garza*, the trial court relied on § 13–708 to impose consecutive sentences for two counts on which Garza was convicted. The trial court "evidently interpreted the statutory language as creating a presumption that a defendant convicted of multiple charges should serve consecutive sentences"; for, as the Court explained, "[o]ne of the reasons the judge gave for imposing consecutive sentences was the presumption that the sentences must be consecutive." *Id.* at 901. But, the Court observed, the "statute ... does not use the word 'presumption' and creates no such presumption." *Id.*

The Court then looked to an Arizona Court of Appeals decision, *State v. Fillmore*, 187 Ariz. 174, 927 P.2d 1303 (Ariz. Ct.App.1996). In *Fillmore*, the trial judge sentenced the defendant to consecutive sentences on various counts arising out of his operation of a "chop shop." *Garza*, 962 P.2d at 901 (citing *Fillmore*, 927 P.2d at 1306). In vacating those sentences, the *Fillmore* court traced the history of § 13–708, and noted that the statute had been

amended by substituting "consecutively" for "concurrently." *Id.* The *Fillmore* court also noted that in *State v. Van Alcorn*, 136 Ariz. 215, 665 P.2d 97, 101 (Ariz. Ct.App.1983), a case involving the pre-amendment version of the statute, the Arizona Court of Appeals held that the statute did not create a presumption for sentencing, but provided only a default designation applicable when the trial judge failed to specify whether the sentences imposed were concurrent or consecutive. *Id.* Consequently the *Fillmore* court, mirroring the reasoning of the *Van Alcorn* court, held that

> [j]ust as the pre-amendment version of § 13–708 did not diminish the trial court's discretion to impose consecutive sentences, neither does the ... amendment diminish the trial court's discretion to impose concurrent sentences. *Under both versions a trial court must choose, among concurrent and consecutive sentences, whichever mix best fits a defendant's crimes.*

*Id.* (citing *Fillmore*, 927 P.2d at 1313 (emphasis added)).

The Arizona Supreme Court in *Garza* ultimately agreed with the reasoning of the *Fillmore* court. Approving that decision, the Court held that § 13–708

> does not create a statutory presumption designed to bind judicial discretion. It merely requires the judge to set forth reasons for imposing concurrent rather than consecutive sentences and creates a default designation of consecutive sentences when the judge fails to indicate whether the sentences are to run concurrently or consecutively.

*Garza*, 962 P.2d at 901–02. Thus, Souch's contentions notwithstanding, A.R.S. § 13–708 is best seen as creating not a "presumption," but instead, a "default." *See also State v. Ward*, 200 Ariz. 387, 26 P.3d

1158, 1159 (Ariz.Ct.App.2001) ("Section 13–708 is merely a default statute that only applies in sentencing situations when a judge has not specified whether sentences are to run consecutively or concurrently. Section 13–708 neither creates a presumption for consecutive or concurrent sentences, nor imposes any restrictions on a trial court's discretion in choosing between consecutive or concurrent sentences.") (citations omitted).

In this case, the default did not come into play. The trial court did not "fail[] to indicate whether [Souch's] sentences are to run concurrently or consecutively"; it unambiguously stated that they were to run consecutively. And because under both versions of A.R.S. § 13–708 the trial court retained absolute discretion to impose either concurrent or consecutive sentences, *Garza*, 962 P.2d at 901–02, there was no Ex Post Facto Clause violation. *See Dobbert v. Florida*, 432 U.S. 282, 293–94, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (holding that no Ex Post Facto violation occurs where a "statute simply alter[s] the methods employed in determining whether the death penalty [i]s to be imposed" and there is "no change in the quantum of punishment attached to the crime").

### B

■ Souch further argues that, the foregoing analysis notwithstanding, his sentence violated the Ex Post Facto Clause because (1) regardless of the actual import of the statute, the state trial court believed that the statute limited its discretion to impose concurrent sentences, and (2) in

any event, the state trial court failed to list reasons for imposing consecutive sentences, as the old version of A.R.S. § 13–708 required. These contentions, however, are insufficient to merit federal habeas relief.

First, it does not appear that the state trial court did, in fact, believe that A.R.S. § 13–708 limited its discretion to impose concurrent sentences. Indeed, a fair reading of the transcript of Souch's sentencing hearing indicates that the trial court knew that it could impose concurrent sentences instead of consecutive ones, but refused to do so because it could not "find any reason at all why any of the sentences should be concurrent."

Second, the state trial court did in fact list reasons for imposing consecutive sentences. Indeed, as the Arizona Court of Appeals observed on direct review,

the trial court did enumerate several valid reasons for consecutive sentences. These include:

1. the fact that the incident in question occurred shortly after a prior release from the Department of Corrections;

2. the fact that [Souch] showed no remorse for his acts;

3. the finding that [Souch]'s acts were done in a premeditated, deliberate and calculating manner; [and]

4. the finding that Souch pose[d] a danger to society.

*State v. Souch*, No. CR–11455, at 7 (Ariz. Ct.App. filed Oct. 22, 1987).[5] On federal

---

5. Souch maintains that these were reasons supporting imposition of aggravated sentences on the counts, rather than reasons supporting the consecutive running of the sentences. The transcript does not, however, make the fine distinction Souch suggests. Nor could it: as the Arizona courts have explained, the policies that "support the re-

quirement that the trial court articulate the reasons for imposing an *aggravated* sentence" are the same as those that, under the pre-amendment version of the statute, "require[d] the trial court to state on the record the reasons for imposing *consecutive* sentences." *State v. Anzivino*, 148 Ariz. 593, 716 P.2d 50, 55 (Ariz.Ct.App.1986).

habeas review, we must presume these findings to be correct. 28 U.S.C. § 2254(e)(1); *Bains v. Cambra,* 204 F.3d 964, 972 (9th Cir.2000).

Finally, and perhaps most importantly, because the trial court actually had *absolute discretion* to impose either consecutive or concurrent sentences, *see Garza,* 962 P.2d at 901–02, there was no violation of the Ex Post Facto Clause. And because Souch has not alleged any other violation of *Federal* law, neither an alleged abuse of discretion by the trial court in choosing consecutive sentences, nor the trial court's alleged failure to list reasons for imposing consecutive sentences, can form the basis for federal habeas relief. *See Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (rejecting petitioner's claim that a state court misapplied its own aggravating circumstance because "federal habeas corpus relief does not lie for errors of state law...."); *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994) (concluding, where Nevada prisoner challenged state trial court imposition of consecutive sentences without explanation, "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus").

### III

Neither the version of A.R.S. § 13–708 in effect when Souch committed his crimes, nor that in effect when he was sentenced, created any "presumption" that his sentences were to run consecutively or concurrently. Under either version, the trial court retained discretion to impose consecutive or concurrent sentences. Souch's sentence, then, neither was "contrary to," nor "involved an unreasonable application of," Federal law as embodied in the Ex Post Facto Clause. 28 U.S.C. § 2254(d)(1).

AFFIRMED.