IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

MANUEL ZAZUETA GARCIA, *Appellant.*

No. 1 CA-CR 22-0377
FILED 12-5-2023

---

Appeal from the Superior Court in Maricopa County
No. CR2019-006505-001
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Damon A. Rossi
*Counsel for Appellant*

## OPINION

Vice Chief Judge Randall M. Howe delivered the opinion of the court, in which Judge Daniel J. Kiley and Judge Jennifer M. Perkins joined.

**H O W E**, Judge:

**¶1**        Manuel Zazueta Garcia appeals his convictions and sentences for sexual conduct with a minor, aggravated assault, and furnishing harmful items to minors. He contends, among other arguments, that the trial court's failure to articulate its reason for imposing consecutive sentences, as A.R.S. § 13–711(A) requires, entitles him to automatic remand based on this court's holding in *State v. Perez-Gutierrez*, 255 Ariz. 232 (App. 2023).

**¶2**        We reject Zazueta's argument and respectfully decline to follow *Perez-Gutierrez* because a trial court's non-compliance with A.R.S. § 13–711(A) should be reviewed for fundamental or harmless error. In this case, although the court's unobjected-to pronouncement of sentence did not comply with A.R.S. § 13–711(A), Zazueta has failed to show that the error prejudiced him. Because we reject his argument and the other arguments discussed below, we affirm his convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

**¶3**        Zazueta and Mary had two children together, including their daughter Hannah.[1] In 2017, the couple ended their relationship and moved into separate homes. Although Hannah spent most of her time with Mary, she spent weekends with Zazueta. Shortly after the separation, Zazueta began sexually abusing Hannah. The abuse lasted for more than a year, starting when Hannah was seven years old.

**¶4**        In late 2018, Zazueta contacted Mary and told her that Hannah wanted to live with him. When Mary asked, Hannah said she did not want to live with Zazueta and disclosed that he had been sexually abusing her. Mary asked Hannah if she was telling the truth and explained

---

[1]        We use pseudonyms to protect the privacy of the victim and the victim's guardian.

that "there would be consequences to what she was saying." Hannah maintained that she was telling the truth.

¶5         Mary contacted law enforcement, and a forensic interviewer spoke with Hannah the next day. In that recorded interview, Hannah disclosed that Zazueta had been sexually abusing her when she visited him on the weekends for "a year and a half." She disclosed a pattern of forced kissing, oral sexual contact, and sexual intercourse, followed by Zazueta ejaculating in her mouth or genitals. She described the abuse as painful and "nasty." Because the abuse occurred over an extended period, the interviewer had Hannah provide details about three specific "times" Zazueta abused her.

¶6         Hannah disclosed that the "first time" was when Zazueta called her to his bedroom. Once inside, he locked the door and began kissing her. After removing Hannah's pants, Zazueta forced her to engage in oral sexual contact and sexual intercourse. She disclosed that, another "time in the shower," Zazueta entered the bathroom, took off his clothes, and got into the shower with her. He washed her body, then forced her to engage in oral sexual contact and sexual intercourse. Finally, she disclosed that the "last time" was when Zazueta pushed her to the bed and forced her to engage in oral sexual contact and sexual intercourse. She remembered something "white and sticky" coming out of his penis. Hannah also disclosed that Zazueta showed her pornographic videos during the period of abuse.

¶7         After the forensic interview, a nurse examined Hannah and found scar tissue on her external genitals, which is "typically" related to hygiene issues "or some kind of irritation." The nurse found "narrowing" of Hannah's hymen consistent with "penetrating trauma."

¶8         The State charged Zazueta with eight counts of sexual conduct with a minor, class 2 felonies and dangerous crimes against children; one count of aggravated assault, a class 6 felony; and one count of furnishing harmful items to minors, a class 4 felony. The State alleged specific conduct as to each count and associated, as relevant here, one count of sexual conduct with a minor ("Count 1") with the "last time —oral/vaginal," another count of sexual conduct with a minor ("Count 2") with the "last time—oral/penile," and one count of aggravated assault with the "first time—kiss on the mouth."

¶9         Before trial, the State notified the trial court that Hannah struggled to remember details of the abuse during trial preparation. If this

occurred at trial, the State explained that it would request to play portions of the forensic interview as a recorded recollection under Arizona Rule of Evidence ("Rule") 803(5). Zazueta objected, and the court reserved ruling until the State's case-in-chief.

¶10 At trial, Hannah testified generally about the pattern of abuse, describing what Zazueta would "usually" do to her. Hannah, however, could not remember the details of each instance of abuse. As to the "first time," Hannah could remember only that Zazueta closed the door, pushed her to the bed, and kissed her. Similarly, as to the "time in the shower," she could remember only that Zazueta got into the shower and washed her. Hannah remembered more details about the "last time," testifying that Zazueta's "mouth would usually go on [her] mouth or on [her] private spot" and he forced her "to suck his private part." When the State asked if she remembered telling the forensic interviewer that Zazueta also forced her to engage in sexual intercourse on this occasion, she responded "I think so, yes." She remembered screaming, Zazueta covering her mouth, and something "white and sticky" coming from his penis.

¶11 Hannah confirmed that the forensic interviewer explained that she needed to provide only truthful, accurate information. Hannah avowed that her memory would have been better at the time of the interview, and she identified herself in a screenshot from that interview. She went on to testify that the abuse made her feel "mentally shut down." Mary also testified that Hannah appeared "very scared" when she disclosed the abuse. Mary added that, overall, the abuse caused Hannah to become withdrawn, distrustful, and insecure.

¶12 Based on this testimony, the State asked to play portions of Hannah's forensic interview. Over Zazueta's objection, the trial court allowed the State to play portions of the interview involving the "first time" and the "time in the shower." Because the recording's sound quality was poor, the interviewer testified to what Hannah specifically disclosed. The interviewer testified that she spoke with Hannah in a manner that used open-ended questions to eliminate the potential for inaccurate information, informed Hannah that she must tell the truth, and promoted a neutral and non-coercive atmosphere. The court did not admit the recording in evidence or provide it to the jury during deliberations. *See* Ariz. R. Evid. 805(3) ("If admitted, the [recorded recollection] may be read into evidence but may be received as an exhibit only if offered by an adverse party.").

¶13 To provide context for Hannah's testimony, a "blind or cold expert" on child sexual abuse testified that victims of ongoing or repetitive

abuse may develop what is called "script memory." Such victims will describe the typical pattern of abuse, using only "general terms to describe it." When a victim displays "script memory," a forensic interviewer will ask them to describe specific instances of abuse that stick out in their mind, such as the first or last time the abuse occurred.

¶14　　　After the State rested in its case-in-chief, Zazueta unsuccessfully moved for a judgment of acquittal under Arizona Rule of Criminal Procedure 20(a)(1). Zazueta then testified on his own behalf, denying all the allegations. He claimed that another family member caught Hannah watching pornography and that she had lied about the abuse to avoid discipline. The jury found Zazueta guilty as charged.

¶15　　　At sentencing, the trial court imposed mandatory, consecutive terms of life imprisonment with the possibility of release after 35 years for the eight counts of sexual conduct with a minor. For the count of aggravated assault and the count of furnishing harmful items to minors, the only convictions that carried discretionary sentences, the court imposed presumptive, consecutive sentences totaling 3.5 years' imprisonment. The court awarded 769 days of presentence incarceration credit toward each of Zazueta's consecutive sentences. Zazueta timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1), 13–4031, and 13–4033(A)(1).

## DISCUSSION

### I. Sufficiency of the Evidence for Counts 1 and 2.

¶16　　　Zazueta contends that the trial court erred by denying his motion for judgment of acquittal, arguing insufficient evidence supports his convictions in Counts 1 and 2. This court reviews the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to sustaining the verdicts. *State v. West,* 226 Ariz. 559, 562 ¶¶ 15–16 (2011).

¶17　　　A defendant is entitled to a judgment of acquittal if "no substantial evidence to support a conviction" exists. Ariz. R. Crim. P. 20(a)(1). Substantial evidence "is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419 (1980)). In considering the sufficiency of the evidence, the central inquiry is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted). This court does not reweigh the evidence or reassess the

credibility of witnesses. *State v. Cox*, 217 Ariz. 353, 357 ¶ 27 (2007) (citations omitted).

**¶18** As relevant here, a person commits sexual conduct with a minor if he intentionally or knowingly engages in "oral sexual contact with any person who is under eighteen years of age." A.R.S. § 13–1405(A). The offense is a class 2 felony if committed against a child under 15 years old and carries a mandatory term of life imprisonment if committed against a child under 12 years old. A.R.S. §§ 13–705(B), 13–1405(B). Oral sexual contact is defined as "oral contact with the penis, vulva or anus." A.R.S. § 13–1401(A)(1).

**¶19** As the State alleged, Counts 1 and 2 involved the "last time" Zazueta forced Hannah to engage in oral sexual contact. Multiple witnesses testified that Hannah was under 12 years old at the time of the abuse. Hannah testified that the general pattern of abuse involved oral sexual contact. When asked to specify, she testified that, as typical, Zazueta put his "mouth" on her genitals and made her "suck" his genitals. Hannah described Zazueta ejaculating after engaging in this conduct. The nurse also testified that Hannah had signs of irritation and injury to her genital area. Witness testimony, taken together with the physical evidence, proved each element of the offenses in Counts 1 and 2. *See Mathers*, 165 Ariz. at 67. Even if Zazueta were correct that the physical evidence did not prove non-penetrative oral sexual contact, a victim's uncorroborated testimony may be sufficient to support a sexual abuse conviction. *See State v. Jerousek*, 121 Ariz. 420, 427 (1979); *State v. Williams*, 111 Ariz. 175, 177–78 (1974). On this record, Hannah gave sufficient details of the relevant sex acts and we do not reweigh her testimony. *See Cox*, 217 Ariz. at 357 ¶ 27. Zazueta has thus shown no error.

## II. The State's Use of the Forensic Interview.

**¶20** Zazueta argues that the trial court abused its discretion by allowing the State to play portions of Hannah's recorded forensic interview at trial. He claims that the interview constituted inadmissible hearsay. This court will not disturb the trial court's ruling on the admissibility of hearsay evidence absent a clear abuse of discretion. *State v. Valencia*, 186 Ariz. 493, 498 (App. 1996).

**¶21** One exception to the rule against hearsay is a recorded recollection under Rule 803(5). A record qualifies as a recorded recollection if it "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the

witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Ariz. R. Evid. 803(5). If these requirements are satisfied, the record may be read into evidence, but not received as an exhibit for the jury's use during deliberations unless offered by an adverse party. *Id*. A recording of a victim's forensic interview may qualify as a recorded recollection. *State v. Martin*, 225 Ariz. 162, 165 ¶¶ 6, 11–12 (App. 2010).

**¶22**　　　The trial court did not abuse its discretion by allowing the State to play portions of Hannah's forensic interview for the jury, specifically as to the "first time" and the "time in the shower." For both instances, Hannah could not recall anything beyond Zazueta's kissing her or washing her body. Hannah confirmed that she disclosed details of the abuse in the interview, even though she could not remember those details "well enough to testify fully and accurately" at trial. *See* Ariz. R. Evid. 803(5)(A). Hannah avowed that her memory was better at the time of the interview. *See* Ariz. R. Evid. 803(5)(B). Hannah maintained that she told the truth about the abuse. The interviewer also testified that she spoke with Hannah in a way that avoided suggested responses, instructed her to be truthful, and promoted a non-coercive atmosphere. These procedures negate any thought that the recording did not accurately reflect Hannah's knowledge at the time of the interview. *See* Ariz. R. Evid. 803(5)(C). The State showed only brief, isolated portions of the interview addressing matters Hannah could not recall at trial and the court did not provide the recording to the jury for deliberations. On this record, the court did not err in allowing the jury to hear portions of the recorded forensic interview. *See* Ariz. R. Evid. 803(5).

## III.　　Failure to Comply with A.R.S. § 13–711(A).

**¶23**　　　Zazueta argues that the trial court did not explain why it imposed consecutive sentences for the  aggravated assault and furnishing harmful items to minors convictions, as A.R.S. § 13–711(A) and *Perez-Gutierrez* require. He claims that the case must be remanded for the court to articulate its reason for imposing consecutive sentences. Although the State notes it is seeking review of *Perez-Gutierrez* by the Arizona Supreme Court, it concedes that the holding requires that the case be remanded for the court to comply with A.R.S. § 13–711(A), which requires the trial court to state on the record its reason for imposing discretionary sentences consecutively or concurrently. We are not, however, required to accept the State's concession. *See State v. Dominguez*, 192 Ariz. 461, 463 ¶ 7 (App. 1998) (citation omitted).

**¶24** In *Perez-Gutierrez*, another panel of this court recognized the trial court's duty under A.R.S. § 13–711(A) to state on the record its reason for imposing discretionary sentences consecutively or concurrently. 255 Ariz. 232, 234, 235 ¶¶ 8, 16. Over a dissent, *Perez-Gutierrez* concluded that error required a remand for the trial court to state its reasons. *Id.* at 235 ¶ 16. The majority relied on this court's interpretation of a previous version of the statute in *State v. Anzivino*, 148 Ariz. 593 (App. 1985) for guidance. *Id.* at 234–35 ¶¶ 8–9, 16. In *Anzivino*, this court reasoned that the trial court's "failure to state grounds for imposing consecutive sentences does not fit neatly into [the] definition of fundamental error." 148 Ariz. at 598. The majority thus declined to apply the principles of waiver to the requirements of A.R.S. § 13–711(A). *Perez-Gutierrez*, 255 Ariz. at 235 ¶ 16. The majority rejected the dissent's view that an automatic remand constituted structural error, error requiring reversal or remand without considering whether the error prejudiced the defendant. *Id.* at 237 ¶ 24.

**¶25** Respectfully, we agree with the *Perez-Gutierrez* dissent. The majority's approach amounts to structural error review, where prejudice is presumed. *Id.* at 241 ¶ 47 (Catlett, J., dissenting). Structural error occurs "only in a very limited class of cases," *Johnson v. United States*, 520 U.S. 461, 468 (1997), and this does not constitute one of those rare occasions. This approach "elevates a failure to explain the reasons for imposing a consecutive or concurrent sentence to structural error, requiring automatic vacatur and remand," and we should avoid vacating a defendant's sentence based on a mere "technicality." *Perez-Gutierrez*, at 240, 241 ¶¶ 40, 47 (Catlett, J., dissenting). The dissent concluded that "we should follow the same path we do in almost all criminal cases where error occurs in the [trial] court—apply harmless error review if a defendant objected and fundamental error review if he did not." *Id.* at 238 ¶ 29. We agree with the dissent's analysis and depart from the *Perez-Gutierrez* majority's holding. *See Castillo v. Indus. Comm'n*, 21 Ariz. 465, 471 (App. 1974) (recognizing that a panel is not strictly bound by another panel's decision).

**¶26** Because Zazueta did not object at sentencing, we review for fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018). Under that standard, as applicable here, Zazueta must show that error occurred, the error was fundamental, and, if the fundamental error was not "so egregious that he could not possibly have received a fair trial," that the error resulted in prejudice. *Id.* at 142 ¶ 21. Because "[a]n illegal sentence constitutes fundamental error," *State v. Forde*, 233 Ariz. 543, 574 ¶ 137 (2014) (citation omitted), we focus on whether Zazueta has shown resulting prejudice.

¶27 On appeal, Zazueta relies only on the directive set forth in *Perez-Gutierrez* and argues the case must be automatically remanded for the trial court to comply with A.R.S. § 13–711(A). He does not argue, or even allege, that the court imposed excessive, illegal sentences for the count of aggravated assault and the count of furnishing harmful items to minors. The record supports Zazueta's contention and the State's concession that the court failed to state its reason for imposing consecutive sentences, as required by A.R.S. § 13–711(A). Zazueta has not shown the error resulted in prejudice, however. For the count of aggravated assault and the count of furnishing harmful items to minors, the jury convicted Zazueta of forcefully kissing his young daughter and showing her pornographic videos. Hannah testified that this occurred during a period of ongoing and repetitive sexual abuse, which left her emotionally withdrawn and distrustful. Despite struggling to recall every instance of abuse at trial, Hannah was able to testify that the "first time" involved her father closing his bedroom door and kissing her. She also remembered that he showed her videos depicting people "doing the same thing" that he forced upon her. The counts of aggravated assault and furnishing harmful items to minors stemmed from distinct and separate conduct that exposed Hannah to an "additional risk of harm." *See State v. Gordon*, 161 Ariz. 308, 315 (1989) (considering "additional risk of harm" to the victim in determining whether the court could legally impose consecutive sentences). The record supports the court's imposition of consecutive sentences. Zazueta has failed to establish fundamental, prejudicial error.

## IV. Presentence Incarceration Credit.

¶28 Zazueta received presentence incarceration credit for each consecutive sentence. However, "when consecutive sentences are imposed, a defendant is not entitled to presentence incarceration credit on more than one of those sentences." *State v. McClure*, 189 Ariz. 55, 57 (App. 1997). Although the State acknowledged that the trial court erroneously awarded full credit for each sentence, it did not raise the issue on appeal or cross-appeal. "It is clear in this case that the [S]tate, had it chosen to do so, could have challenged the incorrect pre-sentence incarceration credit on appeal or by appropriate post-trial motion." *State v. Lee*, 160 Ariz. 323, 324 (App. 1989). We lack the jurisdiction to correct an illegally lenient sentence absent appeal or cross-appeal by the State. *See State v. Dawson*, 164 Ariz. 278, 281–83 (1990). We cannot—and therefore do not—correct this error.

## CONCLUSION

¶29      We affirm Zazueta's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA