Submitted on remand July 13, 2000, reversed and remanded August 15, 2001

# KEITH ALAN CHRISTENSON,
*Appellant,*

*v.*

# S. Frank THOMPSON,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

## 95C-10949; A99430

31 P3d 449

Mark J. Geiger for appellant.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Judy C. Lucas, Assistant Attorney General, for respondent.

Before Haselton, Presiding Judge, and Edmonds and Landau, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiff is serving a life sentence for a murder committed in 1987. He appeals the dismissal of his petition for a writ of habeas corpus, arguing that the trial court erred in granting defendant's motion to dismiss based on its finding that a psychological report provided sufficient support for the Board of Parole and Post-Prison Supervision's (Board) conclusion that plaintiff suffers from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community, and that the Board therefore properly deferred plaintiff's parole release date from 1996 through 1998. For the reasons set forth below, we reverse and remand.

Plaintiff originally initiated this action in March 1995. He asserted that, in 1994, the Board deferred his parole release based on a version of ORS 144.125 that was not in effect at the time his crime was committed, in violation of the *ex post facto* provisions of the Oregon and United States Constitutions. Defendant moved to dismiss, and the trial court granted defendant's motion. Plaintiff appealed, and we reversed and remanded based on our decision in *Meadows v. Schiedler*, 143 Or App 213, 924 P2d 314 (1996), that application of the later version of ORS 144.125 to individuals whose crimes had been committed earlier violated the *ex post facto* provision of the Oregon Constitution. *Christenson v. Thompson*, 143 Or App 483, 923 P2d 1316 (1996).

In August 1996, the Board again deferred plaintiff's parole, this time basing its decision on the version of ORS 144.125 in effect at the time of plaintiff's crimes, finding that "the doctor's diagnosis coupled with all the information it is considering, does result in a finding of a severe emotional disturbance that constitutes a danger to the health or the safety of the community." Plaintiff then amended his replication in this proceeding to challenge the Board's 1996 order rather than its earlier 1994 order. Defendant again moved to dismiss, arguing that the Board applied the version of the statute in effect at the time of plaintiff's crimes, and that the Board was not bound by a psychiatric or psychological diagnosis of plaintiff, but was entitled to reach its own conclusions as to whether plaintiff suffered from a "present severe

emotional disturbance such as to constitute a danger to the health or safety of the community[.]" ORS 144.125(3) (1991).

In support of his motion, defendant submitted a psychological evaluation of plaintiff conducted by Dr. Shellman in June 1996. In his report, Shellman provided some background information about plaintiff and the crime for which he was incarcerated. In 1987, plaintiff's girlfriend broke up with him and married another man. Several weeks later, defendant went into a bar where he saw his former girlfriend and her husband, and attacked and killed the husband with a knife. Plaintiff told Shellman that he had been drinking excessively at the time, and that he had been drinking and using drugs since his discharge from the Army in 1968. Plaintiff received veteran's benefits connected with his service due to service-connected post-traumatic stress disorder. After witnessing a fishing-related fatality in 1986, plaintiff's post-traumatic stress disorder symptoms began to recur. At the time of his crime, plaintiff was diagnosed as suffering from depression, post-traumatic stress disorder, alcohol dependence, alcohol amnestic disorder, and post-alcohol withdrawal.

Shellman also recounted plaintiff's history since his incarceration. Plaintiff participated for five years in Alcoholics Anonymous, enrolled in several therapy groups, and obtained a bachelor's degree from Western Oregon State College. Plaintiff was working toward a master's degree in public administration at the time of the evaluation. Plaintiff generally had a good record of behavior in prison, although he did have a disciplinary infraction in 1992 relating to THC in his urine. Shellman reported that testing showed plaintiff's intelligence to be in the superior range. Shellman noted that plaintiff had a narcissistic tendency to overvalue his personal worth. Shellman also noted that plaintiff tended to be overly authoritarian and argumentative in some interpersonal situations. Shellman concluded:

> "Prior to trial and sentencing, Mr. Christenson was diagnosed as suffering from Depression, Post-Traumatic Stress Disorder, Alcohol Dependence, Alcohol Amnestic Disorder, and Alcohol Withdrawal. As well, he was diagnosed as having a Dependent Personality Disorder. *I no longer find his Axis I diagnoses to be present.* He has applied

himself assiduously to the treatment of those disorders. *However, I do find him to have the residuals of a Mixed Personality Disorder with narcissistic and dependent features.* I am not overly concerned about the remaining narcissistic features as his excelling at academic pursuits probably is providing adequate enforcement for the inflated sense of self-worth. I am concerned about his marked sense of emotional deprivation and loss, his lack of certainty about his masculinity, and his marked tendency to be overauthoritarian and argumentative in interpersonal situations that challenge that masculinity. His excessive needs for closeness can make him vulnerable to the manipulations of others. If he chooses a female partner who is not submissive to him, the authoritarianism will surface. Also of concern is his history of substance abuse. The inmate can never use a licit or illicit substance that destroys cognitive controls. Whenever he is released, the inmate must be continuously involved in a substance abuse treatment and/or support group to help him maintain sobriety. I should not consider the inmate to be a danger to the community if he abstains from alcohol, drugs, and relationships with woman [sic] who take advantage of his dependency needs. Psychotherapy should be mandated so that he can learn to deal with his doubts about self, his unmet need states, and his inability to deal with manipulative or assertive women." (Emphasis added.)

The trial court held that Shellman's report provided sufficient evidence to support the Board's decision. Plaintiff again appealed, and this court dismissed plaintiff's appeal as moot on the ground that the order he sought to challenge had been superseded by a later order. *Christenson v. Thompson*, 158 Or App 347, 974 P2d 263 (1999). The Supreme Court reversed and remanded to this court in light of *Hamel v. Johnson*, 330 Or 180, 998 P2d 661 (2000). *Christenson v. Thompson*, 330 Or 360, 6 P3d 1101 (2000). We therefore turn to the merits of plaintiff's claim.

Plaintiff asserts that the trial court erred in finding that the Board's order deferring his parole release date was sufficiently supported by the record. In particular, plaintiff asserts that Shellman's report does not contain a cognizable "diagnosis" of a "present severe emotional disturbance." He further argues that, even if the Board was entitled to consider information beyond the psychological report in making

its decision, the only evidence defendant offered in support of his motion to dismiss in this case was the psychological report, and thus the only question presented at this point is whether the psychological report provides sufficient evidence to support the Board's decision.

■    Plaintiff frames a number of his arguments in terms of whether "substantial evidence" supported the Board's decision. We rejected similar arguments in *Hamel v. Johnson*, 173 Or App 448, 25 P3d 314 (2001). For purposes of habeas corpus review, the Board's orders must be supported by some evidence in the record. *Id.* at 456. In *Weidner v. Armenakis*, 154 Or App 12, 19, 959 P2d 623, *vac'd and rem'd* 327 Or 317, (1998), *withdrawn by order* July 13, 1998, *reasoning readopted and reaffirmed in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den* 328 Or 40 (1998), we concluded that, under ORS 144.125(3) (1991), "the determination as to whether a prisoner suffers from a severe emotional disturbance such as to constitute a danger to the health and safety of the community is a judgment that the legislature intended the Board to make." Thus, we concluded, "[a]lthough *a psychiatric or psychological diagnosis is a prerequisite* to the Board's consideration of whether the statutory criteria have been met, that diagnosis alone does not dictate the result." *Id.* (emphasis added). The question in this case is whether, in fact, defendant has demonstrated that there existed the prerequisite "psychiatric or psychological diagnosis" from which the Board could draw the conclusion that plaintiff suffered from a present severe emotional disturbance such as to constitute a danger to the health and safety of the community.

■    As noted above, Shellman concluded that plaintiff's Axis I diagnoses were no longer present. Plaintiff's depression, post-traumatic stress disorder, alcohol dependence, alcohol amnestic disorder, and alcohol withdrawal all were Axis I diagnoses. *See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders*, 26 (4th ed 1994) (DSM-IV). The only diagnosis of plaintiff not coded on Axis I was a dependent personality disorder. However, Shellman opined that plaintiff had only "the *residuals* of a Mixed Personality Disorder with narcissistic and dependent features." (Emphasis added.) The question, then, is whether

"the residuals" of a personality disorder qualify as a "psychiatric or psychological diagnosis" on which the Board may base its determination that an inmate suffers from a present severe emotional disturbance. We conclude that it does not.

"Diagnosis" is a relatively straightforward term. Diagnosis is "the art or act of identifying a disease from its signs and symptoms." *Webster's Third New Int'l Dictionary*, 622 (unabridged ed 1996). Shellman diagnosed plaintiff with the "residuals" of a mixed personality disorder with narcissistic and dependent features. In the medical context, "residual" means "the disability (as a scar or a limp) remaining after *satisfactory recovery* from a disease or operation." *Id.* at 1931 (emphasis added). *See also Stedman's Medical Dictionary*, 1220 (23rd ed 1976) ("residual" is "relating to the nature of a residue; left behind"). The context in which Shellman used the term supports the conclusion that, in Shellman's opinion, plaintiff had, in fact, made a satisfactory recovery from his personality disorder. As noted above, Shellman opined that plaintiff's academic achievements could alleviate potential problems with narcissistic personality features and that avoidance of relationships with manipulative women could prevent dependency problems in the future. Similarly, he made a suggestion about plaintiff needing to abstain from the use of substances that destroy cognitive controls, although he had concluded that plaintiff no longer suffered from alcohol-related disorders. It is true that Shellman indicated that the residuals of plaintiff's personality disorder make him more vulnerable to problems in the future. However, that residuals of a disorder may make an individual more prone to problems in the future does not support a conclusion that the individual has been "diagnosed" with such future problems.

ORS 144.125(3) (1991) provided:

> "If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release date until a specified future date."

In *Weidner*, we construed the language of that statute and concluded that "a psychiatric or psychological diagnosis is a

prerequisite" to the Board's finding of a present severe emotional disturbance such as to constitute a danger to the health or safety of the community. 154 Or App at 19. Thus, a psychiatric or psychological diagnosis must provide the foundation for the Board's finding that the emotional disturbance in question is "present" and "severe." A medical opinion that a person has made a satisfactory recovery from a previous condition and has only "residuals" of that condition does not provide the type of "diagnosis" upon which the Board may base a finding that the condition in question is even "present," much less that it is "severe." We thus conclude that the trial court erred in granting defendant's motion to dismiss plaintiff's petition for a writ of habeas corpus.

A motion to dismiss a writ of habeas corpus is treated as the functional equivalent of a summary judgment motion. *McClintock v. Schiedler*, 123 Or App 334, 336 n 2, 859 P2d 580 (1993). The only evidence that defendant offered in support of his motion to dismiss were Board action forms showing that the Board had deferred plaintiff's parole, the Shellman psychological report discussed above, and the sentencing order entered on plaintiff's underlying conviction. Those documents do not demonstrate that no genuine issue of material fact exists, and that defendant is entitled to judgment as a matter of law. We conclude that this case must be remanded for a trial on the merits of plaintiff's claim.

Reversed and remanded.