**Duyet Hung LE, Petitioner—Appellant,**

v.

**Stan CZERNIAK, Superintendent, Respondent—Appellee.**

No. 04–35350.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 2005.

Decided April 4, 2005.

Barbara L. Creel, Assistant Federal Public Defender, Portland, OR, for Petitioner–Appellant.

Lester R. Huntsinger, Office of the Oregon Attorney General, Salem, OR, for Respondent–Appellee.

Before: HUG, BERZON, and BYBEE, Circuit Judges.

## MEMORANDUM *

Duyet Hung Le appeals the district court's denial of his petition for habeas corpus. The district court found no *ex post facto* violation in the Oregon Parole Board's postponement of Le's release date. On *de novo* review, *Singh v. Ashcroft*, 351 F.3d 435, 438 (9th Cir.2003), we affirm.

A statute that is applied 1) retrospectively and 2) operates to the disadvantage of those affected by it implicates the *Ex Post Facto* Clause of Article I, Section 10 of the United States Constitution. *Weaver v. Graham*, 450 U.S. 24, 29–30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). Not every law that disadvantages a defendant is a prohibited *ex post facto* law. In order to violate the clause, the law must essentially alter "the definition of criminal conduct" or increase the "punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441–42, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); *see also Cal. Dep't of Corrs. v. Morales*, 514 U.S. 499, 504, 506–07 & n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

The 1993 version of Oregon Revised Statutes Section 144.125(3) gives the Board more discretion in postponing parole, making it less likely that the Board will release prisoners. *See Meadows v. Schiedler*, 143 Or.App. 213, 924 P.2d 314, 318–20 (1996). We have previously found an *ex post facto* violation where the Board applied this version of the statute to a person imprisoned under the more lenient, pre–1993 statute. *See generally Brown v. Palmateer*, 379 F.3d 1089 (9th Cir.2004). In this case, however, the Board applied the correct version of the statute. There is therefore no *ex post facto* problem.

In his psychological evaluation, Dr. Colistro concluded that, although Le "display[ed] no behavioral signs of significant mental or emotional disturbance," he "continues to present with a severe personality disorder predisposing him to the commission of a crime to a degree rendering him a danger to the safety and welfare of the community." The report took into account background information regarding Le's crimes and personal history, but particularly emphasized Le's prison behavior and noted that "he has only begun to address" the thought and behavior patterns underlying his personality disorder and criminal

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

behavior. Contrary to Le's assertions, the report focused on the entirety of Le's history and especially his responses and mental state at the time of the psychological interview, thus allowing the Board to assess his then-present state. Dr. Colistro's diagnosis of "Personality Disorder with Antisocial and Passive–Aggressive Features," under these circumstances, is sufficient to support the Board's decision. *Cf. Christenson v. Thompson*, 176 Or.App. 54, 31 P.3d 449, 451–52 (2001) (discussing psychological evaluation and finding the *residuals* of a personality disorder insufficient to support a postponement of parole, but suggesting that the personality disorder itself might be sufficient); *Weidner v. Armenakis*, 154 Or.App. 12, 959 P.2d 623, 626 & n. 2 (1998) (en banc), *withdrawn* July 13, 1998, *reasoning readopted and aff'd Merrill v. Johnson*, 155 Or.App. 295, 964 P.2d 284 (1998) (en banc) (affirming dismissal of a habeas petition where petitioner was diagnosed with a personality disorder).

The Board, noting that it "considered this matter under the laws in effect at the time of the commitment offense(s)," stated that "based on all the information it is considering at this hearing [The Board] finds that the *doctor's diagnosis* coupled with all the information it is considering, does result in a finding of a *present severe emotional disturbance* such as to constitute a danger to the health and safety of the community" (emphasis added). Under the 1985 version of § 144.125(3), whether there is a present severe emotional disturbance is a legal conclusion, not a medical conclusion. *Weidner*, 959 P.2d at 625–26. Although "a psychiatric or psychological diagnosis is a prerequisite to the Board's consideration of whether the statutory criteria have been met," the Board, and not the psychiatrist or psychologist, ultimately makes the determination, and may take into account factors beyond the diagnosis itself. *Id.* at 626–27; *see also Christenson*,

31 P.3d at 452. Medical terms do not track legal terms specifically, and the fact that a psychologist specifies an Axis II rather than an Axis I diagnosis speaks to the medical classification, and not to the legal sufficiency of the diagnosis. *Weidner*, 959 P.2d at 625–27. Here, the psychologist made a diagnosis, as required, and the Board took into account all of the information before it in finding there was a "present severe emotional disturbance" sufficient to postpone Le's release under the terms of the 1985 statute.

In *Brown*, we held that a similar case did constitute an *ex post facto* violation, because the psychological report at issue in that case provided no "foundation for the Board's postponement of Brown's parole release date." 379 F.3d at 1094. That case does not govern this one. In *Brown*, the psychologist report noted that "Brown 'does exhibit some signs of emotional disturbance, particularly of a passive-dependent nature,' but did not diagnose Brown with any disease or disorder." *Id.* at 1091. Because there was absolutely no diagnosis, we concluded that "the Board retroactively applied the post–1993 version of the statute, employing a discretionary scope it did not possess under the" earlier version of the statute. *Id.* at 1094–95. Without *some* diagnosis, the Board could not, under the pre–1993 statute, postpone a prisoner's release. *See Weidner*, 959 P.2d at 625–26 (diagnosis provides the foundation for Board's findings); *Christenson*, 31 P.3d at 450–51 (diagnosis provides basis; Board must determine the disturbance is present and severe). Where the psychologist's report includes such a diagnosis, as it does here, we cannot say that the Board applied the post–1993 version of the statute instead of the 1985 version of the statute the Board states that it applied. We will not review whether the Board, under that state statute, should

**295**

have reached a different conclusion. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (examining questions of state law is inappropriate on habeas review).

We cannot say, even under the lesser standard of deference applicable when, as here, there is no reasoned state court decision on the merits, *see Brown*, 379 F.3d at 1092–93, that the state court decision was "contrary to or an unreasonable application of" the Supreme Court's *ex post facto* jurisprudence. 28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792–93, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). Therefore, we AFFIRM the district court's denial of Le's petition for habeas corpus.