**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIE F. HESS,
          *Petitioner-Appellant,*

v.

BOARD OF PAROLE AND POST-PRISON
SUPERVISION,
          *Respondent-Appellee.*

No. 06-35963

D.C. No.
CV-05-00718-REJ

OPINION

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

Argued and Submitted
November 8, 2007—Portland, Oregon

Filed January 29, 2008

Before: Raymond C. Fisher and Marsha S. Berzon,
Circuit Judges, and Judith M. Barzilay, Judge.*

Opinion by Judge Fisher

*The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

1457

## COUNSEL

Anthony D. Bornstein, Federal Public Defender's Office, Portland, Oregon, for the petitioner-appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, Carolyn Alexander (argued), Assistant Attorney General, Janet A. Metcalf, Assistant Attorney General, Office of the Oregon Attorney General, Salem, Oregon, for the respondent-appellee.

## OPINION

FISHER, Circuit Judge:

Willie Fern Hess appeals from the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. He asserts that Oregon Revised Statute § 144.125(3) (1991),[1] which allows the Parole Board to postpone his parole release date if it finds he has "a psychiatric or psychological diagnosis of a present severe emotional disturbance such as to constitute a danger to the health or safety of the community," is unconstitutionally vague. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

## BACKGROUND

Hess is an inmate at the Snake River Correctional Institution in Oregon, who has been incarcerated since 1984 as a result of multiple convictions on rape, sodomy and child sexual abuse charges. Hess first became eligible for parole in May 1994. Under Oregon law, the Oregon Board of Parole and Post-Prison Supervision ("Board") must release a prisoner on his parole release date unless it finds that his parole

---

[1]Hereinafter, all cites to § 144.125(3) are to the 1991 edition of the Oregon Revised Statutes unless otherwise noted.

should be postponed for one of several statutory reasons. *See* Or. Rev. Stat. § 144.245. The Board may postpone a prisoner's release date if the prisoner has a "psychiatric or psychological diagnosis of a present severe emotional disturbance such as to constitute a danger to the health or safety of the community." § 144.125(3). Hess challenges the Board's September 2003 decision to postpone his parole release date by two years under Oregon Revised Statute § 144.125(3).

In anticipation of his 2003 parole hearing, Hess was evaluated by a licensed psychologist, Dr. Frank Colistro. Dr. Colistro's report indicated that Hess was "alert, fully oriented, pleasant and cooperative, displaying no behavioral signs for the presence of significant mental or emotional disturbance." However, Dr. Colistro also stated that based on the nature of Hess' offenses, his pattern of offending and his refusal to participate in prison programming, "[Hess] continues to pose a high risk for recidivating." Dr. Colistro diagnosed Hess under the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") with Pedophilia as well as Personality Disorder with Narcissistic and Antisocial Features. He noted that these diagnoses "are severe ones predisposing him to the commission of crimes to a degree rendering him an ongoing threat to the health and safety of the community" and recommended that "the only viable protective factor relative to ensuring community safety is containment."

The Board then conducted a hearing, where it took testimony from Hess and the mother of one of Hess' victims. Afterward, the Board unanimously voted to postpone Hess' parole release date by an additional two years. The Board acknowledged that it had received Dr. Colistro's report and stated that "based on the doctor's report and diagnosis, coupled with all the information that the Board is considering, the Board concludes that the inmate suffers from a present severe emotional disturbance that constitutes a danger to the health or safety of the community." Hess appealed the Board's decision to the Administrative Review Board, which affirmed the

Board's decision, noting that "Dr. Colistro concluded that your Axis I [Pedophilia] and Axis II [Personality Disorder] conditions are severe ones predisposing you to the commission of crimes rendering you an ongoing threat to the health and safety of the community."

Hess sought judicial review of the Board's decision in the Oregon Court of Appeals by filing a motion for leave to proceed with judicial review under Oregon Revised Statute § 144.335 (2002). The court of appeals dismissed Hess' motion for failing to present a substantial question of law. Under Oregon law, such a dismissal constitutes an adverse decision on the merits of Hess' petition. *See* Or. Rev. Stat. § 144.335(6) (2002). Hess appealed to the Oregon Supreme Court, which also denied review without comment. Hess then filed this federal petition for habeas corpus under 28 U.S.C. § 2254. Because Hess is challenging an administrative decision to postpone his parole and not his underlying state court conviction, he did not need to obtain a certificate of appealability under 28 U.S.C. § 2253(c)(1)(A). *See Rosas v. Nielsen*, 428 F.3d 1229, 1231-32 (9th Cir. 2005) (per curiam).

A district court's denial of a habeas corpus petition is reviewed de novo. *See Leavitt v. Arave*, 371 F.3d 663, 668 (9th Cir. 2004) (per curiam). Because Hess' petition was filed after April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a federal court is permitted to grant habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). To prevail, the petitioner must demonstrate "that the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but 'objectively unreasonable.' " *Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (quoting *Woodford v. Viscotti*, 537 U.S. 19, 25 (2002)). Where, as here, the state

court reaches the merits without providing a reasoned decision for us to review, however, "we independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." *Brazzel v. Washington*, 491 F.3d 976, 981 (9th Cir. 2007) (internal quotation marks omitted).

## ANALYSIS

As a basic principle of due process under the Fifth Amendment, a state law must establish adequate guidelines to govern the exercise of discretion by state officials so that the law neither "authorizes [n]or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). The Supreme Court has therefore long recognized that the Due Process Clause contains a substantive component that "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Accordingly, although Hess does not assert any procedural deficiencies in his parole hearing, he argues that the Board's decision runs afoul of the Due Process Clause because the Oregon statute under which his parole was postponed is impermissibly vague. We disagree, and so we affirm.[2]

**[1]** "[A] party challenging the facial validity of [a law] on vagueness grounds outside the domain of the First Amendment must demonstrate that the enactment is impermissibly vague in all of its applications." *Hotel & Motel Ass'n of Oakland v. City of Oakland,* 344 F.3d 959, 972 (9th Cir. 2003) (internal quotation marks omitted). It therefore follows that "if the statute is constitutional as applied to the individual asserting the challenge, the statute is facially valid." *United*

---

[2]Because we deny Hess' habeas corpus petition on the merits, we need not reach the question of whether he properly exhausted his claim before the state courts. *See* 28 U.S.C. § 2254(b)(2).

*States v. Dang*, 488 F.3d 1135, 1141 (9th Cir. 2007). Accordingly, mere "speculation about possible vagueness in hypothetical situations not before the [c]ourt" will not support a facial attack on a statute that is "valid 'in the vast majority of its intended applications.' " *Hill*, 530 U.S. at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)); *see also* Laurence H. Tribe, *American Constitutional Law* § 12-32 (2d ed. 1988) ("Where the vice is vagueness . . . the statute in question is vague either in all possible applications or at least as applied to the litigant's conduct, and not simply as applied to some others."). To succeed in voiding section 144.125(3) for vagueness, Hess must therefore show that the statute is vague in all its applications or at the least as applied to himself.

**[2]** The statute Hess challenges provides the Board with authority to postpone a prisoner's release date, thereby lengthening the time he spends in prison. It does not, however, impose a criminal penalty for past behavior. Rather, it guides the exercise of an administrative decision, albeit one in which Hess has a protected liberty interest. *See* Or. Rev. Stat. § 144.245 (1999) (stating that the prisoner "shall be released" on his parole date); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (noting that prisoners have a protected liberty interest in a parole decision when the statute states that the prisoner "shall" be released "unless" certain conditions are met). The Due Process Clause does not require the same precision in the drafting of parole release statutes as is required in the drafting of penal laws. *See Glauner v. Miller*, 184 F.3d 1053, 1055 (9th Cir. 1999); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498 (1982) (noting the "degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment"). Accordingly, we have "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Hoffman Estates*, 455 U.S. at 498-99.

**[3]** Neither this court nor the Supreme Court has identified the level of specificity required for a parole release statute to avoid impermissible vagueness. We believe, however, that our jurisprudence concerning vagueness challenges to sentencing statutes is informative here. Like parole release statutes, sentencing statutes guide decisions about how to impose punishments; they do not themselves define and penalize crimes. When faced with vagueness challenges to statutes that govern the imposition of the death penalty, the Supreme Court has upheld the statutes so long as they permitted a "principled distinction between those who deserve the death penalty and those who do not," and directed the exercise of discretion in such a way as to "minimize the risk of wholly arbitrary and capricious action." *Lewis v. Jeffers*, 497 U.S. 764, 774-76 (1990) (internal quotation marks omitted).

**[4]** The consequences of imprecision are clearly less severe here than they are for statutes that govern imposition of the death penalty. Even assuming, however, that parole release statutes must meet vagueness standards similar to those applicable to death penalty statutes, section 144.125(3) is not unconstitutionally vague. To postpone a prisoner's parole under section 144.125(3), the Board must find that the prisoner has a "psychiatric or psychological diagnosis of a present severe emotional disturbance such as to constitute a danger to the health or safety of the community." By the plain terms of the statute, then, the Board may not postpone the prisoner's parole merely by making a finding that he suffers from *any* psychiatric or psychological diagnosis. Rather, it must determine that such diagnosis constitutes an "emotional disturbance" that is both "present" and "severe." *Id*. Further, the Board must also conclude that this present severe emotional disturbance "constitute[s] a danger to the health or safety of the community." *Id*. The language of the statute thus allows the Board to make a "principled distinction" between those whose parole should be postponed and those whose parole should not. *Lewis*, 497 U.S. at 776.

**[5]** Further, exactness can be achieved not just on the face of the statute, but also through limiting constructions given to the statute by the state court or enforcement agency. *See Ceja v. Stewart*, 97 F.3d 1246, 1249 (9th Cir. 1996) (holding that even a facially vague statute is not constitutionally deficient if the state courts have given it "[a] narrowing construction" that satisfies vagueness concerns); *see also Hoffman Estates*, 455 U.S. at 495 n.5. Although section 144.125(3) places the ultimate parole determination in the hands of the Board, the Oregon Court of Appeals has held that a "*psychiatric or psychological diagnosis is a prerequisite* to the Board's consideration of whether the statutory criteria have been met." *Christenson v. Thompson*, 31 P.3d 449, 451 (Or. Ct. App. 2001) (internal quotation marks omitted). Further, the court of appeals has held that the Board cannot make a finding of a present severe emotional disturbance if the psychiatrist's diagnosis merely opines that the prisoner suffers from the "residuals" of a previous condition, *see id.* at 452, or if it indicates only that the prisoner has " 'some elements' of a personality disorder," *Newcomb v. Thompson*, 33 P.3d 319, 320 (Or. Ct. App. 2001) (per curiam). Particularly given these narrowing constructions by the state court, the statute is not facially vague in all of its applications.[3]

**[6]** Lastly, we note that the statute is not unconstitutionally vague as applied to Hess. Although Dr. Colistro stated that

---

[3]The state suggested at oral argument that the existence of a psychiatric or psychological diagnosis is the only limitation on the parole board's discretion. Were that the case, the statute might fail to cabin sufficiently the board's discretion. Such potential diagnoses are so numerous and diverse that nearly every individual could be diagnosed with some malady, from insomnia to stuttering to nicotine dependence. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed. 2000). As our discussion of the statutory language makes clear, however, the existence of such a diagnosis is but one limitation on the board's discretion; the board must also find that the diagnosis constitutes an "emotional disturbance," that it is "present," "severe," and that the disturbance makes the applicant a danger to the health or safety of the community.

Hess did not outwardly display "*behavioral* signs for the presence of significant mental or emotional disturbance," (emphasis added), he ultimately diagnosed Hess under the DSM-IV with Pedophilia, an Axis I disorder, and with Personality Disorder with Narcissistic and Antisocial Features, an Axis II disorder. He noted that these diagnoses "are *severe* ones predisposing him to the commission of crimes to a degree rendering him an *ongoing threat to the health and safety of the community*" (emphasis added). The doctor's diagnoses, combined with the Board's own analysis of the testimony presented at Hess' parole hearing and in his personal records, provided a sufficient basis for the Board to conclude that Hess exhibited a present severe emotional disturbance such as to constitute a danger to the health or safety of the community. Because the Board's finding was based on two psychological diagnoses, both of which the psychiatrist concluded were "severe" and would predispose Hess to recidivism for his dangerous crimes, the statute was not vague as applied to Hess.

## CONCLUSION

Because Oregon Revised Statute § 144.125(3) is neither facially vague nor vague as applied to Hess, the decision of the district court is AFFIRMED.